**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| PAINTERS DISTRICT COUNCIL 16 LOCAL UNION 294, | ) ) | Case No.: 12-cv-0570 LJO-BAM |
| Plaintiff, | ) ) | **ORDER DENYING MOTION TO VACATE ARBITRATION AWARD** |
| v. | ) ) | |
| COLOR NEW CO., LOUIE ANDREW , LOIZU d/b/a/ COLOR NEW CO. | ) ) ) | |
| Defendant. | ) ) | |

**INTRODUCTION**

Before the Court is Defendant Louie Andrew Loizu dba Color New Co.'s, ("Defendant") Motion to Vacate the Arbitration Award issued April 11, 2013 ("Award").[1]  (Docs. 26, 30, 35). Plaintiff Painters District Council 16 Local Union 294 ("Plaintiff") has filed an opposition to the Motion.  (Docs. 31, 32).  Pursuant to Local Civil Rule 230(g), the Court concludes that this matter is appropriate for determination without oral argument.   Having reviewed the parties' arguments, briefing, and the entire Court file, the Court DENIES Defendant's Motion to Vacate the Arbitration Award.

---

[1]      Although Defendant's current motion is filed *pro se*, the Court notes that Plaintiff was previously represented by counsel in this lawsuit as well as in the subsequent arbitration.

## BACKGROUND

On August 6, 2012, this Court granted Plaintiff's Motion to Compel Binding Arbitration in this labor dispute.  (Doc. 17).  The arbitration proceedings were conducted through the American Arbitration Association ("AAA"), and heard by arbitrator Paul Crost.[2]  On February 13, 2013, Plaintiff and Defendant, both of which were represented by counsel, appeared for the arbitration before Arbitrator Crost.  *See* Declaration of Daniel S. Brome ("Brome Decl."), Ex. A (Doc. 33-1 at 1). Arbitrator Crost issued an initial award on April 11, 2013, which found that Defendant violated the Master Labor Agreement ("MLA") and instructed the parties to resolve the amount of damages. Brome Decl., Ex. A at 13.  The parties were unable to agree on the amount owed and on June 10, 2013, the Arbitrator issued a supplemental award, which awarded $29,672.11 in wages and benefits to Plaintiff.  Brome Decl. Ex. B at 4.

Defendant now moves this Court to vacate the Award, alleging, amongst other things, that the arbitrator did not disclose material facts establishing his favoritism towards unions prior to the arbitration.  (Doc. 26 at 2). Plaintiff opposes Defendant's Motion to Vacate the Award, and instead, in a separate motion pending before District Judge Lawrence J. O'Neill asks the Court to grant Plaintiff's petition to confirm the Award and enter judgment on the Award in Plaintiff's favor.  (Doc. 31).

## LEGAL STANDARD

The role of the courts in reviewing arbitration awards is extremely circumscribed. *Southern California Gas Co. v. Util. Workers Union of Am., Local 132, AFL-CIO*, 265 F.3d 787, 792 (9th Cir. 2001) (citing *Stead Motors v. Auto. Machinists Lodge*, 886 F.2d 1200, 1208 n. 8 (9th Cir. 1989) (en banc)).  In reviewing an award, a court must afford great deference to the arbitrator's decision as well as the interpretation of the arbitrability of the dispute. *See Sheet Metal Workers' Int'l Ass'n v. Madison Indus., Inc.*, 84 F.3d 1186, 1190 (9th Cir. 1996); *see also Pack Concrete, Inc. v. Cunningham*, 866 F.2d 283, 285 (9th Cir. 1989). Such deference is given even in light of the speed and informality in which arbitration can take place. *See Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 879 (9th Cir. 2007). Indeed, it is these twin advantages that are lauded by federal policy and make arbitration favorable for

---

[2]     Arbitrator Crost was initially proposed by counsel for Defendant and was selected through AAA's usual procedures.  Brome Decl., Ex. C., Doc 33-3 at 5.

the many private parties in resolving their disputes. *See Fairchild & Co., Inc. v. Richmond, Fredericksburg & Potomac R.R. Co.*, 516 F. Supp. 1305, 1313 (D.D.C. 1981); *see also Madison Indus., Inc.*, 84 F.3d at 1190; *see also Scherk v. Alberto-Culver Co.*, 417 U.S. 506 (1974) (acknowledging that the FAA "reflects a legislative recognition of the 'desirability of arbitration as an alternative to the complications of litigation.'") (*quoting Wilko v. Swan*, 346 U.S. 427, 431 (1953)).

In assessing cases such as the instant one, it is important to remember that "arbitration is a consensual agreement of the parties to substitute a final and binding judgment of an impartial entity for the judgment of the court." *See Coast Trading Co. v. Pac. Molasses Co.*, 681 F.2d 1195, 1197 (9th Cir. 1982). The FAA itself provides limited grounds on which a federal court may vacate an arbitral award, and such awards are binding and enforceable unless the district court finds one of the specified grounds present. *See* 9 U.S.C. § 10; *see also Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 994 (9th Cir. 2003) (en banc).

While the FAA generally presumes that arbitration awards will be confirmed, the statute enumerates four narrow bases to vacate an award. Specifically, section 10 provides that a court "may make an order vacating the [arbitration] award only: (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a).[3]

---

[3]     Section 9 of the FAA provides that a "party to the arbitration may apply to the court . . . for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." 9 U.S.C. § 9.

**DISCUSSION**

Defendant argues that the Court should vacate the arbitration award in its entirety because: (1) Arbitrator Crost failed to disclose potential bias; and (2) Arbitrator Crost exceeded his authority in issuing the final Award.[4]  The Court addresses each of these arguments below.

**1.     Alleged Bias**

Defendant's first argument is that the Award should be vacated because Arbitrator Crost failed to disclose prior relationships and his failure to do so created an impression of bias or evident partiality in favor of Plaintiff.  Specifically, Defendant alleges bias based on Arbitrator Crost's failure to disclose the following prior relationships and personal beliefs: (1) prior to becoming a neutral, Arbitrator Crost worked representing unions for over forty (40) years; (2) while Arbitrator Crost was a member of the school board, he was considered the "union candidate;" (3) Arbitrator Crost's former firm still represents unions; (4) Arbitrator Crost had a friend or at least an acquaintance at the location where the arbitration was held; (5) in an online interview, Arbitrator Crost expressed his support for the "union movement;" and (6) during *ex parte* communications, Crost advised Plaintiff's counsel on how and when to present their arguments.  (Doc. 26 at 4).  Defendant alleges that if Crost had disclosed this bias prior to the arbitration, he would have never agreed to Crost as an arbitrator.

Section 10(a)(2) of the Federal Arbitration Act allows a court to vacate an arbitration award where "there was evident partiality or corruption in the arbitrators." 9 U.S.C. § 10(a)(2).  In order for Defendant to succeed on this evident partiality claim under 9 U.S.C. §10(a)(2), he must show that specific facts create a reasonable impression of bias. *Lagstein v. Certain Underwriters at Lloyd's*, 607 F.3d 634, 642 (9th Cir.2010); *see also Employers Ins. of Wausau v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 933 F.2d 1481, 1489 (9th Cir. 1991) (a party "must demonstrate more than a mere appearance of bias to disqualify an arbitrator").  Situations involving "evident partiality" for purposes of 9 U.S.C. § 10(a) include an arbitrator's financial interest in the outcome of the arbitration, *Sheet*

---

[4]     The Court has reviewed Plaintiff's Motion to Vacate the Arbitration Award (Doc. 26) and the Opposition to Petitioner's Motion to Compel Arbitration (Doc. 30) in their entirety. Careful consideration has been made of these documents and Defendant's arguments therein. While several of Defendant's arguments are unclear, the Court has afforded Defendant a liberal construction of the Motion given he is acting pro se. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

*Metal Workers Int'l Ass'n Local 420 v. Kinney Air Conditioning Co.*, 756 F.2d 742, 746 (9th Cir. 1985), an arbitrator's failure to disclose prior consulting work for a party, *Commonwealth Coatings Corp. v. Continental Casualty Co.*, 393 U.S. 145, 146 (1968),  a family relationship that made the arbitrator's impartiality suspect, *Morelite Constr. Corp. v. New York City Dist. Council Carpenters Benefit Funds*, 748 F.2d 79, 85 (2nd Cir. 1984), an arbitrator's former employment by one of the parties, *Merit Ins. Co. v. Leatherby,* 714 F.2d 673, 680 (7th Cir.), *cert. denied,* 464 U.S. 1009 (1983) and an arbitrator's employment by an entity represented by one of the parties' law firms, *Ormsbee Dev. Co. v. Grace*, 668 F.2d 1140, 1149 (10th Cir. 1982).  While not exhaustive, these examples provide the level of partiality that is required by the statute.

None of the purported undisclosed conflicts alleged by Defendant would cause a reasonable person to conclude that Arbitrator Crost was partial to Plaintiff.  Although Defendant attempts to generate bias out of Arbitrator Crost's previous association with unions, a close review of the business or personal relations proffered by Defendant reveals that they are either trivial, remote, or non-existent.  Defendant has not shown or alleged that Arbitrator Crost had any direct business contact with Plaintiff or any other unions.  Instead, Defendant argues that Crost formerly represented unions; that his former law firm still represents unions; and that Crost may have known someone working in the office where the arbitration was held.  Defendant's suspicions of bias are speculative at best. Defendant has not put forth any evidence linking Crost's previous associations and prior relationships with any evidence that Crost has any type of ongoing relationship, personally, socially, professionally or financially that would establish partiality towards Plaintiff.  To set aside an award for arbitration partiality, the interest or bias . . . must be direct, definite and capable of demonstration rather than remote, uncertain or speculative.  *Hernandez v. Smart & Final, Inc.*, 2010 U.S. Dist. LEXIS 60755 (S.D. Cal. June 16, 2010).

Further, while Defendant is troubled with Crost's previous association with unions, business relationships between arbitrators and related parties to the arbitration are expected and tolerated as a trade-off for the expertise and informality which knowledgeable arbitrators lend the arbitration process.  Most notably, it was Defendant's Counsel who originally suggested Arbitrator Crost for this arbitration proceeding based on his background and experience.  *See* Brome Decl., Ex. C, Doc 33-3 at

5. Courts have recognized the benefits of having a neutral arbitrator with extensive experience in a specific area—labor law—arbitrate those same disputes.   In his concurrence in *Commonwealth Coatings*, Justice White stated: "It is often because they [arbitrators] are men [and women] of affairs, not apart from but of the marketplace, that they are effective in their adjudicatory function.   [This means] that arbitrators are not automatically disqualified by a business relationship with the parties before them if [a party] is unaware of the facts but the relationship is trivial."   *Commonwealth Coatings Corp.,* 393 U.S. at 150 (White, J., concurring).

The same analysis applies to the statements Crost made in support of the "union movement." Arbitrators are typically chosen from among those who are deeply involved in the legal community concerned with the subject matter of the dispute. It is to be expected, therefore, that arbitrators may express personal views related to the subjects of their arbitrations.   That, however, does not suggest that Arbitrator Crost had any personal interest or stake in the outcome of this arbitration.   Arbitrators must be neutral despite any personal feelings or beliefs that exist beyond the merits of the case before them.   S*ee generally Cook Chocolate Co., Div. of World's Finest Chocolate, Inc. v. Salomon, Inc.*, 748 F. Supp. 122, 128 (S.D.N.Y. 1990) (Court concluded that in a proceeding overseen not by professional judges, who are trained to preserve a neutral appearance, but by ordinary businessman, personal feelings and opinions do not confirm bias such as would warrant vacating the award).

Moreover, Crost's former representation of unions, in and of itself, does not show personal involvement that would establish that Crost was biased toward Plaintiff.   *In re Equimed, Inc*. is illustrative. *See* 2006 U.S. Dist. LEXIS 45078, * 15-18 (E.D. Pa. June 30, 2006). In that case, the arbitrator's former employer (PECO) had retained a party's counsel, the accountancy firm that employed one party's expert witness, and even one of the parties (Ernst and Young) to do some consulting work. *Id.* at * 15.   None of these relationships were ongoing during the arbitrator's tenure in the matter.   *Id.* at *16. The Court found no appearance of bias by the arbitrator where there was nothing in the record to support a claim that the arbitrator had any substantial personal involvement in those dealings, noting it was not surprising that a company as large as PECO utilized Ernst and Young and other similar firms and calling these relationships "remote and trivial." *Id.* at * 8.   This Court reaches the same conclusions here.   Although Crost's former law firm represents unions, no evidence

has been submitted suggesting that Crost has a continuing relationship with his former law firm. Without more, Arbitrator Crost's prior employment is remote and trivial.

Finally, Defendant also accuses Plaintiff's Counsel and Arbitrator Crost of improper communications as follows: "During the arbitration the arbitrator gave Plaintiff's council [sic] advice stating 'what I would suggest is you wait to hear evidence or presentation the employer makes…' Page 56 of the transcripts line 1.  During the same conversation [Arbitrator Crost] stated 'you may be better not raising issues that haven't even been considered by opposing council [sic].'  Page 57 of the transcripts line 6."  According to Defendant, this instruction from Arbitrator Crost also evinces his partiality.  (Doc. 26 at 4).   However, there is nothing suggesting impartiality from the statements made by Arbitrator Crost to Plaintiff's Counsel and Crost's statements do not amount to improper *ex parte* communications.   The statements, made on the record, demonstrate that Arbitrator Crost attempted to focus the issues and guide the proceedings. *See Ballantine Books, Inc. v. Capital Distributing Co.*, 302 F.2d 17, 21 (2d Cir. 1962) ("A judge is not wholly at the mercy of counsel, and would be remiss if he did not participate in questioning to speed proceedings and eliminate irrelevancies. A *fortiori* an arbitrator should also act affirmatively to satisfy and expedite the proceedings before [the arbitrator], since among the virtues of arbitration which presumably moved the parties to agree upon it are speed and informality.").  These statements do not establish partiality.

In sum, Defendant has not stated specific facts to support his claim that Crost was biased. Thus, there is no basis to infer evident partiality; and a reasonable person would not conclude that Arbitrator Crost was partial to one party to the arbitration.

### 2.      Whether the Arbitrator Exceeded His Authority

Defendant's remaining arguments are twofold. First, Defendant argues that Arbitrator Crost exceeded his authority when he awarded Plaintiff fees related to a foreman rate when Defendant was not required to hire a foreman at the job site.  More specifically, Defendant takes issue with Arbitrator Crost's supplemental damages award.  In his supplement award clarification, Arbitrator Crost ordered

that "a foreman's rate of $42.52/hour shall be used."[5]   Defendant argues that Arbitrator Crost exceeded his authority in assessing a foreman rate because nothing in the MLA requires that he hire a foreman.   Second, Defendant argues that the arbitrator erred when he determined that Defendant did not timely withdraw from the MLA.   Defendant explains that prior to the underlying dispute, Katherine Loizu mailed a letter to Plaintiff withdrawing from the MLA.   At the arbitration, Plaintiff argued that no such letter was received and in his final award, Arbitrator Crost ruled that Defendant failed to timely withdraw from the MLA.   (Doc. 26 at 4-5).   According to Defendant, Arbitrator Crost exceeded his authority in issuing and award because Defendant properly withdrew from the MLA.

The Court may vacate an arbitration award when the arbitrator exceeds the scope of the issues submitted.   Under 9 U.S.C. § 10(a)(4), "arbitrators exceed their powers when they express a 'manifest disregard for the law,' or when they issue an award that is 'completely irrational.'"   *See Bosack v. Soward*, 586 F.3d 1096, 1104 (9th Cir. 2009); *Comedy Club, Inc. v. Improv West Assocs.*, 553 F.3d 1277, 1290 (9th Cir. 2009).   This is a high standard for vacatur: "[i]t is not enough . . . to show that the panel committed an error-or even a serious error.'"   *Lagstein*, 607 F.3d at 642.   Indeed, "[n]either erroneous legal conclusions nor unsubstantiated factual findings justify federal court review of an arbitral award under the statute, which is unambiguous in this regard."   *Bosack*, 586 F.3d 1102.

Irrespective of this Court's opinion on the merits of the decision, the Court is in no position to question the award here because this is not a case where there has been a "manifest disregard of the law" or an "irrational award."   An award is "completely irrational only where the arbitration decision fails to draw its essence from the agreement."   *Lagstein*, 607 F.3d at 642; *Comedy Club*, 553 F.3d at 1288. This standard is "extremely narrow." *Bosack*, 586 F.3d at 1106. "An arbitration award draws its essence from the agreement if the award is derived from the agreement, viewed in light of the agreement's language and context, as well as other indications of the parties' intentions." *Lagstein*,

---

[5]      Although the Court does not reach the merits of Defendant's argument, the Court does find it necessary to clarify the arbitrator's ruling.   In his opinion, Arbitrator Crost explained that the question of whether to assess a foreman's rate was in dispute.   He further stated "while I am able to describe the bases on which the calculation of the amount of the remedy, I am leaving to the parties the actual calculation."   Doc. 33-1 at 12.   Arbitrator Crost retained jurisdiction on the matter for 60 days to allow the parties to determine the dollar value of the award.   *Id.*   The parties were unable to reach an agreement and Arbitrator Crost issued a supplemental damages award.   (Doc. 33-2).   In a follow-up conference call, Crost rejected Defendant's argument and determined that the foreman rate was appropriate.   Doc. 33-1.

607 F.3d at 642; *Bosack*, 586 F.3d at 1106. "[T]he question is whether the award is 'irrational' with respect to the contract, not whether the panel's findings of fact are correct or internally inconsistent." *Lagstein*, 607 F.3d at 642; *Bosack*, 586 F.3d at 1106.

A review of the arbitrator's detailed arbitration award does not reveal that the award was irrational, completely or otherwise. The arbitrator interpreted the provisions of the MLA, weighed the parties' conflicting positions, and reached a decision to give effect to the contract.  But, even assuming that the arbitrator disregarded certain facts, as Defendant argues, in the Ninth Circuit, "[m]anifest disregard of the facts is not an independent ground for vacatur."  *Coutee v. Barington Capital Group, L.P.*, 336 F.3d 1128, 1132-33 (9th Cir. 2003) ("Neither erroneous legal conclusions nor unsubstantiated factual findings justify federal court review of an arbitral award . . . .").  Here, the arbitrator considered the factual disputes cited by Defendant and resolved them in favor of Plaintiff. This Court has no authority to re-weigh the evidence.  *Id.* at 1134.  Thus, Defendant's implication that the Award was completely irrational is without any merit.

For an arbitrator's award to be in manifest disregard of the law, "[i]t must be clear from the record that the arbitrator [ ] recognized the applicable law and then ignored it." *Mich. Mut. Ins. Co. v. Unigard Sec. Ins. Co.*, 44 F.3d 826, 832 (9th Cir. 1995).  This is not what occurred here. The Arbitrator did not ignore the law.  Instead, Arbitrator Crost interpreted the MLA to determine whether Defendant timely withdrew, and since he did not, the amount of damages Plaintiff should be awarded. Defendant's request to vacate the Arbitrator's Award, on these grounds, is simply an attempt to obtain a more favorable decision on the same arguments already made at the arbitration proceeding.  Such a request is unsupported by law and should be rejected. The Supreme Court has been clear that "[t]he proper judicial approach to a labor arbitration award is to refuse to review the merits." *Eastern Associated Coal Corp. v UMWA, Dist. 17*, 531 U.S. 57, 62 (2000).  The Court reiterated this position in *Major League Baseball Players Ass'n. v. Garvey*, 532 U.S. 504 (2001) ("[c]ourts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement.").

While the arbitrator's award is not bulletproof, Defendant does not challenge anything in Crost's award that could amount to an argument that the Arbitrator intentionally disregarded the law

or issued a completely irrational award.  Defendant's arguments here simply take issue with the result of the arbitration, essentially asking this Court to sit in *de novo* review of the arbitration proceedings and Arbitrator Crost's factual and legal determinations.  Many of the factual determinations Defendant seeks this Court to address turn primarily on the weight of the evidence, which is for the Arbitrator to address—not this Court.

Arbitrator Crost issued a 13-page decision carefully analyzing the arguments Defendant presents in the instant motion.  Defendant may disagree with the Arbitrator's final ruling, but this disagreement with the arbitrator's decision is fundamentally a dispute about the merits; it is not about the award's basic procedural fairness.  Accordingly, Defendant's argument that Arbitrator Crost exceeded the scope of his authority also fails. *Hawaii Teamsters & Allied Workers Union, Local 996 v. UPS*, 241 F.3d 1177, 1183 (9th Cir. 2001) (recognizing the extreme deference owed to a labor arbitrator's decision, the Court declined to determine whether the arbitrator accurately interpreted the CBA as it was not the Court's role).

**CONCLUSION**

None of the grounds set forth in Defendant's Motion supports vacating the arbitrator's final award. Accordingly, for the reasons stated, IT IS ORDERED that Defendant's Motion to Vacate the Arbitration Award is DENIED.

IT IS SO ORDERED.

Dated:   **August 2, 2013**          /s/ *Barbara A. McAuliffe*
                                   UNITED STATES MAGISTRATE JUDGE